UNITED STATES DISTRICT COURT     DISTRICT OF MINNESOTA

Court File No.: 10cv4945 ADM/JJK
Judge: _____

RECEIV
DEC 21 2010
CLERK, U.S. DISTRICT
ST. PAUL, MINNES

---

Steven E. Uhr,

    Plaintiff,                 **COMPLAINT**

v.

Responsible Hospitality Institute, Inc., Jim Peters, Diageo
North America, Inc., Gary Zizka, American Beverage Licensees, Inc.,
John D. Bodnivich, Distilled Spirits Council of the United States, Inc.,
Wine and Spirits Wholesalers of America, Inc., National Beer Wholesalers
of America, Inc., International Downtown Association, Messerli & Kramer P.A.,
James C. Wicka, Arthur, Chapman, Kettering, Smetak, and Pikala P.A.,
Jeremiah P. Gallivan, Corporate 4 Insurance Agency, Inc., Applebee's
International Inc., Famous Dave's of America, Inc., Chili's of Minnesota Inc.,
Luby's, Inc., Prudential Financial, Inc., Citibank, N.A., Richard A. Yoast,
James F. Mosher, and Robert H. Bruininks

    Defendants.

---

## PARTIES

1.     Plaintiff Steven E. Uhr resides in Edina, Minnesota.

2.     Defendant Responsible Hospitality Institute, Inc. ("RHI") is a non-profit organization headquartered in Santa Cruz, California.

3.     Defendant Jim Peters is the president of RHI.

SCANNED
DEC 21 2010
U.S. DISTRICT COURT ST. PAUL
J6K

4.  Defendant Diageo North America, Inc. ("Diageo") is a subsidiary of Diageo plc, the world's largest producer of beer, wine, and distilled spirits. Diageo is headquartered in Norwalk, Connecticut, and has an office in St. Paul, Minnesota. Diageo is on the board of RHI and is an underwriter of RHI activities.

5.  Defendant Gary Zizka is Diageo's Vice President of Public Policy. He represents Diageo on RHI's board.

6.  Defendant American Beverage Licensees, Inc. ("ABL") is a national trade association of off-premise and on-premise alcohol retailers, with over 20,000 members. ABL is based in Bethesda, Maryland. ABL is on the board of RHI.

7.  Defendant John D. Bodnivich is the executive director of ABL. He represents ABL on the RHI board.

8.  Defendant Distilled Spirits Council of the United States, Inc. ("DISCUS") is the national trade association representing America's leading distillers. DISCUS is based in Washington. D.C. DISCUS is on the board of RHI and is an underwriter of RHI activities. Diageo is on the board of DISCUS.

9.  Defendant Wine and Spirits Wholesalers of America, Inc. ("WSWA") is the national trade association representing the wholesale tier of the wine and spirits industry. WSWA is based in Washington, D.C. WSWA is on the board of RHI and is an underwriter of RHI activities.

10. Defendant National Beer Wholesalers of America, Inc. ("NBWA") is the national trade association representing the wholesale tier of the beer industry. NBWA is based in Alexandria, Virginia. NBWA is on the board of RHI and is an underwriter of RHI activities.

11. Defendant International Downtown Association ("IDA") is an association of over 600 community business trade associations worldwide. It is headquartered in Washington, D.C. IDA is on the board of RHI.

12. Defendant Messerli & Kramer, P.A.("Messerli") is a law firm whose principal place of business is in Minneapolis, Minnesota.

13. Defendant James C. Wicka ("Wicka") is an attorney whose principal place of business is in Wayzata, Minnesota. Wicka formerly worked at Messerli.

14. Defendant Arthur, Chapman, Kettering, Smetak, and Pikala P.A. ("Arthur Chapman") is a law firm whose principal place of business is in Minneapolis, Minnesota.

15. Defendant Jeremiah P. Gallivan ("Gallivan") is an attorney whose principal place of business is in St. Paul, Minnesota. Gallivan formerly worked at Defendant Arthur, Chapman.

16. Defendant Corporate 4 Insurance Agency, Inc. ("Corporate 4") is an insurance agency with a principal place of business in Edina, Minnesota.

17. Defendant Applebee's International, Inc. ("Applebee's") has its principal place of business in Lenexa, Kansas. Applebee's owns the Applebee's brand and owns approximately twenty Applebee's restaurants in the Minneapolis-St. Paul metropolitan statistical area ("twin cities").

18. Defendant Famous Dave's of America, Inc. ("Famous Dave's") is a Minnesota corporation with its principal place of business in Minnetonka, Minnesota. Famous Dave's owns the Famous Dave's brand and owns approximately fifteen Famous Dave's restaurants in the twin cities.

19. Defendant Chili's of Minnesota Inc, ("Chili's") is a Minnesota corporation and the owner of approximately ten Chili's restaurants in the twin cities. Chili's is a wholly owned subsidiary of Brinker International, Inc., based in Dallas Texas.

20. Defendant Luby's, Inc., is the owner of the Fuddruckers brand and owns the Fuddruckers located in the twin cities. Luby's is based in Houston, Texas.

21. Defendant Prudential Financial, Inc. ("Prudential") is a financial services institution based in Newark, New Jersey. Prudential has an office at 4538 Cass Street in San Diego ("Prudential San Diego").

22. Defendant Citibank, N.A., ("Citibank") is a full-service bank based in New York City. Citibank has an office at 1910 Garnet Avenue in San Diego ("Citibank San Diego").

23. Defendant Richard A. Yoast until recently was the head of alcohol policy at the American Medical Association.

24. Defendant James F. Mosher is an attorney and the president of Alcohol Policy Consultations. Mosher has worked with Yoast in developing alcohol policy at the American Medical Association. Mosher is based in Felton, California.

25. Defendant Robert H. Bruininks is the President of the University of Minnesota. He is being sued in a representative capacity for injunctive relief only.

## FACTUAL ALLEGATIONS

26. In 1983 defendant RHI was formed. Defendant Peters has been the president of RHI since then. RHI provides assistance and resources to organize and sustain price-fixing agreements on retail alcohol sales in dozens of communities

throughout the United States and in Canada. This work is conducted under the label "responsible beverage service" and "responsible hospitality."

27. RHI has numerous seminars and conferences and summits and forums and webinars and other events throughout the year at which it instructs on responsible hospitality.

28. Defendant Diageo is the primary sponsor of RHI's "sociable city" forums and other RHI events held throughout the United States. Defendant Zizka is a regular participant at RHI's sociable city forums.

29. Defendant Mosher presented at RHI conferences at least as recently as 2008.

30. RHI contracts with community business trade associations to: (a) access the community with respect to alcohol issues, (b) facilitate an agreement among local hospitality businesses to eliminate drink discounts and promotions, and (c) assist in implementing a program to monitor and enforce the agreement.

31. In or around 1989 a training video titled "Responsible Beverage Service" was produced in California by Defendants Peters and Mosher among others. In the video Mosher discusses the steps that a community should take to implement and sustain a responsible beverage service program. Peters instructs in the video that drink promotions are a "high risk practice" that should be eliminated.

32. At a conference sponsored by RHI in Burlington, Vermont in October 2005, RHI personnel told attendees that:

> Price competition in the hospitality industry has different consequences than the retail industry, which for the most part are not positive. Drink specials often indicate an establishment that is in trouble, and, have the adverse effect of over indulgence. Collaboration between owners will

> help to discourage this type of price war. Community covenants can be created to discourage this type of marketing practice.

See Exhibit 1 at 3. This memo is available under the "tools" section of the RHI website.

33. RHI has provided its services to dozens of communities in the United States and Canada. Among them are the twin cities, Madison, Wisconsin, and San Diego.

Minneapolis/St. Paul

34. The twin cities price-fixing was conducted in part through the "alcohol risk management" ("ARM") program. ARM is a manager/owner training program that advocates that licensed establishments agree to adopt certain written policies, including the elimination of drink discounts and promotions such as "happy hours." The ARM training materials also state that cheap drinks lead to reduced profits.

35. Attorneys, hospitality businesses, and insurance agents were involved in the development of the ARM program.

36. The ARM program was administered through the Alcohol Epidemiology Program within the University of Minnesota's School of Public Health. The University posts ARM policies on its website.

37. The ARM program was funded in part by a grant from the Robert Wood Johnson Foundation ("RWJF"), which is based in Princeton, New Jersey.

38. At least 230 licensed establishments in the twin cities participated in ARM training. The University sent ARM recruiting packets to those establishments through the United States mail.

39. Peters and Mosher consulted on the development, implementation, and evaluation of the ARM program. Mosher has traveled to the twin cities on multiple

6

occasions. During some or all of those visits he consulted with various persons on the ARM program.

40. A video titled "ARM Yourself with Information" was produced in or around 1997 in connection with the ARM program. The video was shown to owners and managers of hospitality businesses at ARM training sessions. Defendants Wicka and Gallivan appear in the video advocating that licensed establishments agree to adopt the written ARM policies. Also appearing in the video advocating for ARM policies was Mike Hadtrath, then an insurance agent at defendant Corporate 4 Insurance.

41. The ARM video shows the written ARM policy restricting the offering of drink discounts and promotions.

42. The ARM video credits defendants Wicka, Gallivan, Messerli, Arthur Chapman, and Corporate 4 Insurance with assisting in its production.

43. Applebee's, Chili's, Famous Dave's, and Fuddruckers are identified in ARM documents as participants in the ARM program.

44. Applebee's, Chili's, Famous Dave's, and Fuddruckers agreed to and did eliminate and reduce the offering of drink discounts as a result of their involvement in ARM.

45. In 2008 the University of Minnesota published a research article evaluating the ARM program. The article concluded that ARM training did not significantly decrease the sale of alcohol to obviously intoxicated patrons.

46. Many licensed establishments in the twin cities still follow and abide by the ARM pricing restrictions.

Madison

47. In September 2002 approximately two dozen licensed establishments near the University of Wisconsin campus issued a press release stating that "we as a group, have agreed that we will **voluntarily** and **immediately** end all drink specials on Fridays and Saturday nights after 8 P.M. in our establishments." (Emphasis in original). A second press release, drafted by an attorney and bar owner, states that "we have our reservations about engaging in what could be considered illegal 'collusion in restraint of trade,' but we feel this proactive position can cut through the fog and confusion surrounding the role of drink specials and [sic] disorderly conduct." The two press releases are attached as Exhibits 2-3.

48. The University of Wisconsin facilitated the formation of the above agreement, and assisted in monitoring the agreement to discourage cheating. The University's efforts in that regard were funded by a grant from RWJF.

49. The RWJF grant was part of the A Matter of Degree ("AMOD") grant program, which began in 1996 and operated at ten universities. The AMOD program was administered by defendant Richard Yoast at the American Medical Association, and evaluated by Henry Wechsler at Harvard University. Yoast directed the AMOD schools to facilitate cooperation and agreement among hospitality businesses to eliminate drink specials and promotions.

50. In 2008, RHI entered into a contract with Downtown Madison, Inc., a community business trade association and member of defendant IDA, to provide its services in Madison. RHI conducted an assessment of the hospitality industry in

downtown Madison, and recommended that licensed establishments create "marketing covenants to control drink specials."

51. Defendant NBWA was involved in monitoring licensed establishments in Madison to deter and prevent cheating from the conspiracy.

San Diego

52. In or around August 2006, thirty bars, restaurants and clubs in the San Diego community of Pacific Beach entered into a "community covenant" in which they agreed to adopt a number of "responsible hospitality practices." One of the practices was that they would "refrain from advertising two for one drink specials or prices below two dollars for any alcoholic beverage sold in our establishments." See Exhibit 4. The agreement was announced at a press conference.

53. The 2006 agreement replaced an earlier "community covenant" among Pacific Beach licensed establishments entered into in or around 1996. That agreement provided that the participants would refrain from offering certain drink promotions.

54. The 2006 price-fixing agreement was organized and facilitated by Discover Pacific Beach ("DPB"), a community business trade association. Defendants Mosher and RHI were also involved in facilitating the formation and operation of that agreement.

55. RHI staff member Marion Novak said the following about the 2006 agreement: "Businesses make more money because they are not selling alcohol at a loss. And if all the bars do it they remain competitive." Ms. Novak also worked as a consultant on the Robert Wood Johnson Foundation's AMOD grant program.

56. Jaime Pursley, a manager at Citibank San Diego, was on the board of DPB at the time the 2006 price-fixing agreement was announced. He represented the interest of Citibank on the DPB board. He was aware of and supported the agreement.

57. Mike McNeill, a manager at Prudential San Diego, was on the board of DPB at the time the 2006 price-fixing agreement was announced. He represented the interest of Prudential on the DPB board. He was aware of and supported the agreement.

58. Plaintiff has purchased alcoholic drinks from Applebee's Chili's, Fuddruckers, and Famous Dave's in the twin cities during the course of the charged conspiracy. Plaintiff has purchased alcohol from other establishments believed to be participants in the charged conspiracy.

## COUNT 1 – PRICE FIXING
(against all defendants)

59. Plaintiff repeats and realleges allegations 1 through 58 above.

60. As discussed herein, the charged defendants participated in a contract, combination, and conspiracy to eliminate drink promotions at licensed establishments in the twin cities and elsewhere.

61. The conduct alleged above was part of a single conspiracy operating in the twin cities, Madison, Wisconsin, San Diego, California, and other communities in the United States and elsewhere.

61. The charged conspiracy is ongoing.

62. The charged conspiracy is conducted within and has a substantial impact on interstate commerce.

63. The charged conspiracy constitutes a *per se* violation of the Sherman Act, 15 U.S.C. Section 1.

64.     Plaintiff is a victim of the charged conspiracy in that he overpaid for drinks purchased from firms engaged in the charged conspiracy.

65.     Pursuant to the Clayton Act, 15 U.S.C. Section 15(a), Plaintiff seeks to recover three times his overcharge damages, plus costs, disbursements, and reasonable attorney fees to the extent allowed by law.

## COUNT 2 – RICO
(against RHI, Peters, Diageo, Zizka, ABL, Bodnivich, DISCUS, WSWA, NBWA, IDA, Applebee's, Chili's, Luby's, Famous Dave's, Prudential, Citibank, Yoast, and Mosher)

66.     Plaintiff repeats and realleges allegations 1 – 58 above.

67.     Defendants and others have voluntarily and intentionally devised and engaged in a scheme to defraud another of money and have engaged in specific fraudulent acts pursuant to that scheme with the intent to defraud.

68.     The defendants and co-conspirators have on numerous occasions used the United States' mail for the purpose of executing and furthering the scheme, in violation of 18 U.S.C. Section 1341. The defendants and co-conspirators have on numerous occasions used interstate wire communications for the purpose of executing and furthering the scheme, in violation of 18 U.S.C. Section 1343.

69.     The charged conspiracy constitutes an enterprise within the meaning of the RICO statute, 18 U.S.C. Section 1962(c). Defendants and other persons engaged in the charged conspiracy through a continuous and related pattern of racketeering activity, including multiple violations of the federal mail fraud and wire fraud statutes.

70.     Among the legitimate organizations whose alcohol policy functions were managed, in whole or in part, by the conspiracy were the Robert Wood Johnson

Foundation, the American Medical Association, Harvard University, the University of Minnesota, and the University of Wisconsin.

71. Plaintiff was injured in his property by reason of defendants' racketeering activities. He seeks a recovery for his injuries pursuant to 18 U.S.C. Section 1964(c).

## JURISDICTION

72. The Court has jurisdiction over this case pursuant to 28 U.S.C. Section 1331.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

1. Find that defendants engaged in price fixing in violation of 15 U.S.C. § 1.

2. Find that defendants engaged in racketeering activity in violation of 18 U.S.C. § 1343.

3. Order defendants to cease their involvement in the charged conspiracy.

4. Award plaintiff treble his actual damages, costs and disbursements, and attorney fees as permitted by law.

5. Award any other relief that the Court deems just and proper.

Dated December 20, 2010

_____
Steven E. Uhr, *pro se*
MN. I.D. No.: 0284038

4524 Balfanz Rd.
Edina, MN 55435
(952) 239-0346